**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
***Southern Division***

**UNITED STATES OF AMERICA,** *

**Plaintiff,** *

**v.** * **Case No.: GJH-16-296**

**DANIEL LAZARTE,** *

**Defendant.** *

* * * * * * * * * * * * *

## MEMORANDUM OPINION AND ORDER

Defendant Daniel Lazarte is currently serving a sentence of 72 months of incarceration at FCI Petersburg Low following his guilty plea to one count of receipt of child pornography. ECF No. 42. Pending before the Court is Mr. Lazarte's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C § 3582(c)(1)(A)(i). ECF No. 48. No hearing is necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons that follow, Mr. Lazarte's Motion is denied.

## I. BACKGROUND

On November 5, 2015, a federal search warrant was executed at Defendant's apartment in Bethesda, Maryland. *See* ECF No. 27-1 at 1.[1] Defendant was read and waived his *Miranda* rights and gave an interview. *Id.* During the interview, Defendant admitted that he had sought and acquired child pornography through the "dark web" and a peer-to-peer file exchange program and that some 100 videos and 300 to 400 images would be found on his laptop computer. *Id.* Officials seized a laptop computer, a desktop computer, and an external hard drive, and Defendant surrendered an additional desktop computer the following day. *Id.* Forensic

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

analysis of the devices revealed more than 2800 unique images and more than 340 unique videos, a subset of which included infants and toddlers, as well as depictions of sexual acts involving children and animals. *Id.* The laptop also contained internet browsing history data indicating that Defendant had navigated to child pornography content and had bookmarked at least four different such websites.

On June 13, 2016, an Indictment was issued charging Mr. Lazarte with two counts of receiving child pornography in violation of 18 U.S.C. § 2252A(a)(2) and one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). ECF No. 1. Defendant was arrested on June 20, 2016. ECF No. 48. At an initial appearance before Magistrate Judge Thomas M. DiGirolamo later that day, Defendant was ordered temporarily detained pending a detention hearing. ECF Nos. 7, 10. At the detention hearing the following day, Magistrate Judge Charles B. Day ordered that Defendant be detained until a third-party custodian was found. ECF No. 9-1. On July 5, 2016, Defendant was arraigned and pleaded not guilty to all counts of the Indictment. ECF No. 12. On August 3, 2016, Judge Day held a hearing reviewing Defendant's conditions of release, ECF No. 16, and subsequently issued an Order stating that because a suitable third-party custodian had not been located, Defendant would remain detained, ECF No. 25.

On November 7, 2016, Mr. Lazarte was rearraigned before the Court and, pursuant to a plea agreement, pleaded guilty to Count One of the Indictment, charging him with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2). ECF Nos. 26, 27. On December 22, 2016, Defendant was sentenced to a term of imprisonment of 72 months, followed by 25 years of supervised release. ECF No. 40, 42. The Court imposed several conditions of release, including a bar on the use of computer systems or devices with Internet access, sex offender registration and

treatment, and prohibitions on contact with children, viewing or possessing pornography, and renting or using a post office box or storage facility. ECF No. 42 at 4.

On June 5, 2020, Mr. Lazarte filed the pending Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of his vulnerability to COVID-19. ECF No. 48. The Government filed an Opposition on June 22, 2020, ECF No. 50, and Defendant filed a Reply on July 1, 2020, ECF No. 51.

## II. DISCUSSION

Asserting that he is at serious risk of becoming severely ill from COVID-19, Mr. Lazarte's Motion seeks a reduction in his sentence for "extraordinary and compelling reasons" pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 48 at 1. The Court reviews the framework applicable to Defendant's request before assessing whether Defendant has satisfied its requirements.

### A. Governing Provisions

Recently modified by Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5238 (2018), 18 U.S.C. § 3582(c) bars courts from modifying terms of imprisonment once imposed unless certain conditions are met. *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). In relevant part, § 3582(c)(1)(A) provides that:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that–
> (i) extraordinary and compelling reasons warrant such a reduction;

> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1).

A complementary provision, 28 U.S.C. § 994(t), provides that the U.S. Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *See United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219, at *2 (D. Md. Apr. 6, 2020). The Commission has provided this description at § 1B1.13 of the U.S. Sentencing Guidelines, which states in relevant part that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that–
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 further details the Commission's understanding of "extraordinary and compelling reasons," which include if a defendant has been diagnosed with a terminal illness or other serious physical or medical condition, is above the age of 65 and is in deteriorating health due to aging, has experienced certain extenuating family circumstances, or if "[o]ther [r]easons" arise that have been "determined by the Director of the Bureau of Prisons" to be "extraordinary and compelling reason[s] other than, or in

combination with, the reasons described" in the Policy Statement. U.S.S.G. § 1B1.13 cmt. n.1(D). The Bureau of Prisons ("BOP") has offered its determination in a Program Statement numbered 5050.50 and titled "Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)."[2]

Judges in this district and elsewhere have found, however, that § 1B1.13 and its Application Note are inconsistent with the First Step Act. As Judge Chuang of this Court recently explained in *United States v. Mel*, while § 1B1.13 "identifies certain specific scenarios under which a sentence reduction could be warranted, it nevertheless permits a reduction based only on meeting the broad category of 'extraordinary and compelling reasons'" as determined by BOP. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) (citing U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(D)). Judge Chuang reasoned, however, that "[s]ince the First Step Act changes the law to allow a compassionate release reduction to be granted by the Court without input from the BOP, the pre-First Step Act references in the policy statement to determinations by the BOP are outdated and not binding." *Id.* Similarly, in *United States v. Decator*, Judge Blake held that "[w]hile Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." 2020 WL 1676219 at *2 (reaching this conclusion after a careful review of the relevant provisions and recent case law).

The Court finds these analyses persuasive and adopts the same conclusion. Accordingly, the Court's consideration of sentence reduction motions follows the three steps established by § 3582(c)(1)(A) as modified by the First Step Act. First, assuming the defendant has exhausted administrative remedies, the Court considers whether a reduction is warranted for extraordinary

---

[2] The Program Statement, issued January 17, 2019, is available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited July 7, 2020).

and compelling reasons, the meaning of which is a matter of the Court's "independent discretion." *Decator*, 2020 WL 1676219, at *2.

Next, the Court assesses whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable Policy Statement remains § 1B1.13, despite its partial nullification as a result of the First Step Act. Accordingly, pursuant to the Policy Statement, the Court must find that "[e]xtraordinary and compelling reasons warrant the reduction;"[3] that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and that "[t]he reduction is consistent with [the Sentencing Commission's] policy statement." U.S.S.G. § 1B1.13. Finally, § 3582(c)(1)(A) provides that after considering the Policy Statement, the Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."

**B. Exhaustion of Administrative Remedies**

As noted previously, § 3582(c)(1)(A) requires that a defendant seeking a modification of a term of imprisonment "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Mr. Lazarte maintains that he filed a request for compassionate release with the warden of FCI Petersburg Low, the BOP facility at which he is incarcerated, on April 29, 2020, but had received no response as of June 5, 2020. ECF No. 48 at 2. In response, the Government states that it assumes without conceding that Mr. Lazarte has exhausted his administrative

[3] A provision of the Policy Statement not at issue here, § 1B1.13(1)(B), provides an alternative to finding extraordinary and compelling reasons under § 1B1.13(1)(A) for Defendants who are at least 70 years old and have served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c).

remedies and that it will inform the Court if it determines that he has not. ECF No. 50 at 3. Having received no such notification, the Court assumes that Mr. Lazarte's unanswered request to the warden suffices to exhaust his administrative remedies.

**C. Extraordinary and Compelling Reasons**

The Court next considers whether Mr. Lazarte has sufficiently demonstrated extraordinary and compelling reasons warranting a reduction of his sentence. Mr. Lazarte asserts that he suffers from medical conditions including "hypertension, morbid obesity, and sleep apnea (requiring the use of a BiPaP machine)." ECF No. 48 at 1; *see also id.* at 11 (noting that Mr. Lazarte is five-foot-six inches tall and weighs approximately 306 pounds).[4] Pointing to statistics showing a steady rise in COVID-19 cases across BOP facilities between mid-March and early May 2020, Defendant argues that his conditions constitute extraordinary and compelling reasons for relief. *Id.* at 11–12.

The Government correctly responds, however, that BOP statistics report no current or past COVID-19 cases among inmates at FCI Petersburg Low. ECF No. 50 at 1 n.1; *see* Federal Bureau of Prisons, COVID-19, https://www.bop.gov/coronavirus (last visited July 7, 2020) (showing zero positive prisoners and one positive staff member who has recovered). Additionally, while the Government "does not contest that the Defendant is at increased risk because of his obesity," it also points to the Centers for Disease Control and Prevention's list of conditions that increase the risk of severe COVID-19 infection, accurately observing that it does not include sleep apnea. ECF No. 50 at 13–14; *see* Ctrs. for Disease Control & Prevention, People of Any Age with Underlying Medical Conditions,

[4] Mr. Lazarte has filed medical records documenting his obesity and other conditions. ECF Nos. 51-2, 51-3.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 7, 2020).[5]

Though the Court acknowledges that Mr. Lazarte's medical conditions increase his risk of serious illness should he contract COVID-19, the Court finds that Defendant has not demonstrated the "extraordinary and compelling reasons" necessary to warrant a sentence reduction under § 3582(c)(1)(A). Importantly, as the Government relates, BOP has taken numerous measures at its facilities as part of an extensive response to COVID-19, including screening of all inmates and staff, establishing quarantine areas and quarantining inmates with a documented risk of exposure, restricting contractor access, suspending social and legal visits and inmate movements, and maximizing social distancing. ECF No. 50 at 11. That these measures have apparently been successful in preventing any inmates at FCI Petersburg Low from contracting COVID-19 indicates that they have mitigated the risk Mr. Lazarte faces, his medical conditions notwithstanding.

Notably, two other courts weighing petitions by FCI Petersburg Low prisoners with medical conditions have reached the same conclusion. In *United States v. White*, the court found that an inmate's fear that COVID-19 will spread to the facility was insufficient to demonstrate extraordinary and compelling reasons despite his asthma, diabetes, hypertension, and decreased liver function. No. 3:18cr61-HEH, 2020 WL 3442171, at *5–*6 (E.D. Va. June 23, 2020). In

[5] The Government also challenges whether the "hypertension" that Defendant suffers from is a condition increasing risk from COVID-19, citing CDC materials listing only "pulmonary hypertension." ECF No. 50 at 14. The website to which the Government points, however, was updated since the Government's briefing, and now explains that while "pulmonary hypertension" is one of the "serious heart conditions [that] increases your risk of severe illness from COVID-19," "hypertension (high blood pressure) . . . may increase your risk of severe illness from COVID-19." Ctrs. for Disease Control & Prevention, People of Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 7, 2020). While the Government is correct that Defendant has not identified which form of hypertension he suffers from, the Court finds it unnecessary to explore this distinction further given the CDC website update and Defendant's obesity, which the Government does not contest increases the risk of severe illness.

light of the absence of cases among prisoners, the court concluded that the defendant's request was "based upon nothing more than 'the mere possibility that COVID-19 will spread to his facility'—a fear that is insufficient to justify release." *Id.* at *5 (quoting *United States v. Feiling*, No. 3:19-cr-112-DJN, 2020 WL 1821457, at *5 (E.D. Va. Apr. 10, 2020)). Similarly, in *United States v. Bowman*, the court found that while the diabetic defendant "undoubtedly suffers from a serious medical condition which places him at greater risk of serious illness or death from Covid-19 . . . there is no reason to believe that he has a higher risk of contracting Covid-19 at FCI Petersburg, which has no cases of the disease, than he would if he were released." No. 1:15CR00025-001, 2020 WL 2614621, at *2–*3 (W.D. Va. May 22, 2020).

The Court reaches the same conclusion here. As the U.S. Court of Appeals for the Third Circuit recently explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Marshall*, No. DKC 13-0492-3, 2020 WL 3447746, at *1 (D. Md. June 24, 2020) (noting this conclusion in *Raia* and denying the defendant's motion for compassionate release); *United States v. Anderson*, No. ELH-19-302, 2020 WL 1929440, at *5 (D. Md. Apr. 20, 2020) (same). In short, while the Court "does not downplay the severity of [Defendant's] medical conditions," which "place him in the 'at risk' population," the Court finds that Defendant's "particularized susceptibility is not sufficient as he fails to also demonstrate a particularized risk of contracting COVID-19." *White*, 2020 WL 3442171, at *5 & n.6.

Because Mr. Lazarte has not sufficiently demonstrated extraordinary and compelling reasons warranting a sentence reduction, the Court need not proceed to considering his

dangerousness to the safety of others or the community if released, whether a reduction would be consistent with the Sentencing Commission's relevant policy statement, or the applicability and impact of the § 3553 factors.

## III. CONCLUSION

For the foregoing reasons, it is ordered by the United States District Court for the District of Maryland that Defendant's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C § 3582(c)(1)(A)(i), ECF No. 48, is **DENIED**.

Date: July 7, 2020

/s/
GEORGE J. HAZEL
United States District Judge